**In re Jeanmarie RUSNAK, Debtor.**

**Bankruptcy No. 94–16584.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 25, 1995.

---

Michael P. Kelly, Langhorne, PA.

Virginia R. Powell, Asst. U.S. Atty., Philadelphia, PA, for U.S.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is the Motion of the Debtor, Jeanmarie Rusnak (the "Debtor"), seeking to hold the United States Office of Personnel Management and the Secretary of the United States Department of Health and Human Services (collectively "HHS" or the "Secretary") in contempt for violation of the automatic stay (the "Motion"). The Secretary filed an Answer opposing the Motion. A hearing was held on January 25, 1995, at which time the Court granted the parties' request that a decision be rendered based on Memoranda of Law and a Stipulation of Facts to be submitted by the parties on or about March 10, 1995. The parties submitted their Memoranda in March, but did not submit the Stipulation of Facts until May 18, 1995. The Debtor's case was converted from Chapter 13 to Chapter 7 on June 2, 1995.

### Facts

The parties have stipulated to the following relevant facts. The Debtor is a podiatrist with her own medical practice. Prior to being excluded from Medicare and other state and federal benefit programs (the "Medicare programs") by HHS for failure to meet her repayment obligation on certain loans, she treated patients that paid her through the Medicare programs.

The Debtor applied for and received four Health Education Assistance ("HEAL") loans from 1983 through 1986 while attending the Pennsylvania College of Podiatric Medicine. The Debtor executed a promissory note in conjunction with each of the HEAL loans. Two of the loans (Claim I) were granted by the Pennsylvania Higher Education Assistance Agency (PHEAA). The two remaining loans (Claim II) were granted by First American Bank and the Bank of

Indiana respectively. These latter two loans were subsequently purchased by the Student Loan Marketing Association (SLMA).

The HEAL loans were to be repaid beginning the first day of the tenth month after the Debtor ceased being a full time student. In June of 1986, the Debtor graduated from podiatry school. Upon graduation, the Debtor requested, and was granted, several forbearances which postponed the date the Debtor was required to commence repaying her HEAL loans. As a result, the Debtor's repayment obligation on Claim I began on November 15, 1989. The Debtor's repayment obligation on Claim II began on April 25, 1989.

Due to the Debtor's failure to keep her HEAL loan payments current, the PHEAA and SLMA declared the loans in default on March 19, 1991. PHEAA and SLMA subsequently filed insurance claims with HHS. HHS paid the claims and, in turn, received assignments of the Debtor's promissory notes. The Debtor subsequently was notified that her repayment obligation on the HEAL loans had been assigned to the United States Government.

Prior to the filing of this bankruptcy, the Health Resources Services Administration (HRSA) of the Public Health Services (PHS) of HHS asked the Debtor to enter into a repayment agreement with respect to Claim I. The Debtor did so and made one payment. In accordance with its administrative procedures, HHS also offered the Debtor an opportunity to enter into a Medicare offset agreement as an alternative means of repayment. The Debtor did not enter into a Medicare offset agreement.

On February 4, 1993 and February 23, 1994, HHS notified the Debtor of its intention to exclude her from the Medicare programs. On September 16, 1994, HHS notified Debtor by letter that in twenty days of the receipt of the letter, she would be excluded from participation in the Medicare programs pursuant to 42 U.S.C. §§ 1320a–7(b)(14) and 1395ccc(a)(3)(B).

The exclusion notice informed the Debtor that she had 60 days from receipt of the letter in which to request a hearing before an

administrative law judge, as well as of her right to be represented by counsel. The notice also informed her that if she was a sole community practitioner, she could request that the Commonwealth of Pennsylvania submit a waiver of the exclusion on her behalf.

The Debtor did not file a written request for a hearing before an administrative law judge or otherwise appeal the exclusion. HHS has not received a request from the Commonwealth of Pennsylvania seeking a waiver of the Debtor's exclusion.

On October 5, 1994, the Debtor filed a Chapter 13 Petition. That same day, her attorney faxed a copy of the Petition to HHS and the United States Attorney. On October 6, 1994, HHS excluded the Debtor from participation in the Medicare programs. The Debtor's exclusion from the Medicare programs remained in effect as of the date of the stipulation.

The Debtor filed the instant Motion on December 8, 1994, seeking damages on the grounds that HHS violated the automatic stay. The Secretary of HHS argues that the Debtor's exclusion from participation in the Medicare programs was a proper exercise of governmental police or regulatory power, and, as such, falls within a statutory exception to the automatic stay.

## Discussion

### Subject Matter Jurisdiction

Before reaching the substantive issues raised by the Debtor's Motion, the Court is obliged to consider the Secretary's position that this Court does not have subject matter jurisdiction to hear the Debtor's Motion, because the Debtor did not exhaust the administrative remedies available to her under the Medicare Act, 42 U.S.C. 1395 *et seq.* The Secretary argues that before judicial review of the Debtor's exclusion from participation in the Medicare programs can be undertaken, HHS must determine whether all reasonable administrative steps were taken to secure repayment of the Debtor's HEAL loans prior to the Debtor's exclusion. In contrast, the Debtor maintains that the Bankruptcy Code provides an independent basis for jurisdiction in this case.

In *In re University Medical Center*, 973 F.2d 1065 (3d Cir.1992), the Third Circuit Court of Appeals addressed the issue of the jurisdiction of the (bankruptcy or district) court to determine whether HHS, seeking to recover overpayment made pre-petition to a debtor, University Medical Center ("UMC"), for reimbursements of Medicare services rendered pre-petition, could withhold payments for Medicare services rendered post-petition without controverting the automatic stay. *Id.* at 1072–73. In that case, HHS argued that because UMC had failed to exhaust its administrative remedies, and because 42 U.S.C § 405(h) precludes judicial review of any "claim arising under" the Medicare Act prior to the exhaustion of administrative remedies, neither the bankruptcy court nor the district court had jurisdiction over UMC's claim. *Id.* UMC argued that its claim was based on the contention that HHS violated the automatic stay provision of the Bankruptcy Code, and, accordingly arose under the Bankruptcy Code, not the Medicare Act. *Id.* at 1073. Thus, according to UMC, the mandate of section 405(h), that the Medicare Act's administrative review procedures be exhausted before judicial review, simply did not apply.

The Third Circuit agreed that UMC's claim arose only because UMC filed for bankruptcy and claimed that HHS had violated the automatic stay. On that basis, and because resolution of the claim neither implicated the administrative remedies of the Medicare Act nor fell within the ambit of those remedies, the court concluded that "where there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required." *Id.,* 973 F.2d at 1074 (quoting *In re Town & Country Home Nursing Servs. Inc.,* 963 F.2d 1146, 1154 (9th Cir.1991)).

■ In the instant case, the Debtor admits that she did not pursue the administrative remedies available to her under the Medicare Act. The Debtor, however, does not take the position that HHS has accorded her unfair treatment, in any way, under the Medicare Act. Consequently, the Court believes that resolution of the Debtor's Motion will neither

implicate the administrative remedies of the Medicare Act nor fall within the ambit of those remedies. The instant dispute exists simply because the Debtor filed for bankruptcy and now claims that HHS violated the automatic stay by excluding her from participation in the Medicare program. Accordingly, the Court agrees with the Debtor that the Bankruptcy Code provides an independent basis for jurisdiction in this case.

### Did HHS violate the automatic stay?

By seeking the protections of the Bankruptcy Code, the Debtor attempted to prevent her exclusion from participating in the Medicare programs, and now asserts that the Secretary violated the automatic stay by excluding her from participation in those programs. The Court is aware that "Congress has repeatedly expressed its legislative determination that the trustee [a debtor] ... is not to have *carte blanche* to ignore nonbankruptcy law." *Midlantic Nat'l Bank v. New Jersey Dept. of Envitl. Protection*, 474 U.S. 494, 502, 106 S.Ct 755, 760, 88 L.Ed.2d 859 (1986). Indeed, as the Supreme Court has cautioned, a "debtor in possession is not relieved of all obligations under [a nonbankruptcy statute] simply by filing a petition for bankruptcy." *In re University Medical Center*, 973 F.2d 1065, 1083 (3d Cir.1992), citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 534, 104 S.Ct. 1188, 1200, 79 L.Ed.2d 482 (1984).

■ Nevertheless, the automatic stay under section 362 of the Bankruptcy Code is one of the fundamental debtor protections provided by the bankruptcy laws. *In re Atlantic Business & Community Corp.*, 901 F.2d 325, 327 (3d Cir.1990). Section 362 provides in relevant part, as follows:

[A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced

before the commencement of the case under this title....

11 U.S.C. § 362(a)(1).

[The automatic stay] gives the debtor a breathing spell from his creditors. *It stops all collection efforts*, all harassment, and all foreclosure actions. It permits a debtor to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy.

*In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6173 (emphasis added). The stay's essential purpose is to protect creditors and thereby protect the bankruptcy goal of equal treatment. *Hunt v. Banker's Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986).

■ A number of statutory exceptions to the automatic stay exist. However, the exceptions are interpreted narrowly in order to further the automatic stay's purpose of protecting all creditors. *In re Glasply Marine Indus., Inc.*, 971 F.2d 391, 394 (9th Cir.1992).

In the instant case, the Secretary relies on 11 U.S.C. § 362(b)(4) and (b)(5), which provide:

(b) The filing of a petition under section 301, 302, or 303 of this title ... *does not operate as a stay* —

   *    *    *    *    *    *

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. (emphasis added).

Section 362(b)(4) operates to exempt a governmental unit in its enforcement of a police or regulatory power, while section 362(b)(5) exempts a governmental unit's action to seek entry of a money (but not enforcement of a

money judgment) in the enforcement of its police or regulatory power. *See, e.g., Penn Terra Ltd. v. Dept. of Envtl. Resources,* 733 F.2d 267 (3d Cir.1984).

For the Secretary's exclusion of the instant Debtor from participation in the Medicare programs to fall under subsection 362(b)(4) or (b)(5), HHS must qualify as a governmental unit that is exercising a police or regulatory power. It is clear that HHS qualifies as a governmental unit. *University Medical Center,* 973 F.2d at 1074. Courts have developed two tests to determine whether a governmental unit's action falls within the police or regulatory exception: the "pecuniary purpose test" and the "public policy test." These tests are essentially the opposite sides of the same coin. Most courts apply both tests and reach the same conclusion. *See, e.g., NLRB v. Continental Hagen Corp.,* 932 F.2d 828, 833–34 (9th Cir.1991).

■ Under the pecuniary purpose test, the court determines whether the government's proceeding relates "primarily to the protection of the [government's] pecuniary interest in the debtor's property, and not to matters of public health and safety." *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir.1986) (citation omitted). The former purpose would subject the proceeding to the automatic stay provision of section 362, while the latter would not. *Id.* On the other hand, the public policy test distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are excepted from the automatic stay. *Id.*

■ The Secretary argues that she has a number of statutory authorities available to her that are used to protect the Medicare programs from fraud and abuse, and to protect the beneficiaries of these programs from physicians, hospitals and suppliers who have demonstrated their untrustworthiness. As such, and relying on 42 U.S.C. § 1307a–

7(b)(14), as well as 42 U.S.C. § 1395ccc(a)(3)(B), the Secretary argues that the exclusion of the Debtor from participating in the Medicare programs was a proper exercise of governmental police or regulatory power. The Secretary also contends that by excluding the Debtor from the Medicare programs, she has not taken a post-petition collection action against the Debtor.

The Debtor, on the other hand, takes the position that 42 U.S.C. § 1307a–7(b)(14) and, particularly, 42 U.S.C. § 1395ccc(a)(3)(B) are collection statutes which have nothing to do with the police or regulatory functions of HHS. Having considered the arguments of both parties, the Court finds itself in agreement with the Debtor.

Section 1320a–7(b)(14) provides in relevant part:

(b) ... The Secretary may exclude the following individuals ... from participation in the [Medicare and State health care programs]:

(14) Default on Health Education Loan or Scholarship obligation

Any individual who the Secretary determines is in default on repayments of scholarship obligations or loans in connection with health professions education made or secured, in whole or in part, by the Secretary and with respect to whom the Secretary has taken all reasonable steps available to the Secretary to secure repayment of such obligations or loans....[1]

Section 1395ccc provides in relevant part:

If [an individual who has defaulted on repayment of a HEAL loan] refuses to enter into a[n offset] agreement or breaches any provision of the agreement—

.     .     .     .     .

(B) ... the Secretary shall immediately exclude the individual from the program under this title, *until such time as the entire past-due obligation has been repaid.*

---

1. Section 1320a–7(b)(14) also provides that:

(A) the Secretary shall not exclude pursuant to this paragraph a physician who is the sole community physician or sole source of essential specialized services in a community if a State requests that the physician not be excluded, and (B) the Secretary shall take into ac-

count, in determining whether to exclude any other physician pursuant to this paragraph, access of beneficiaries to physician services for which payment may be made under title XVIII or XIX.

The Debtor does not allege that subsection (A) or (B) is applicable here.

42 U.S.C. § 1395ccc(a)(3)(B) (emphasis added).

The above statutory provisions are obviously collection statutes. Section 1320a–7(b)(14) provides for exclusion of "[a]ny individual who the Secretary [of the HHS] determines is in default on repayments of scholarship obligations or loans in connection with health professions education." In plain language, section 1395ccc(a)(3)(B) requires the Secretary to exclude from the Medicare program those individuals who have defaulted on HEAL loans and who have either refused to enter into a repayment agreement or have breached such an agreement "until such time as the entire past-due obligation has been paid." Indeed, subsection 1395ccc(c) is entitled "Collection under this statute shall not be exclusive," and provides that the United States is not precluded by this section from applying other provisions of law otherwise applicable to the collections of obligations owed to the United States.

Under the pecuniary interest test, the Court believes it apparent that both the purpose and effect of the statutes in question is to protect the government's pecuniary interest, and not to promote the public's health and safety. Reliance on these collection statutes to exclude the Debtor from participation in the Medicare programs is, therefore, not a proper exercise of the government's police and regulatory power and does not fall within the governmental statutory exception to the automatic stay.

■ Consideration of the same question under the public policy test is also appropriate here, particularly since HHS relies heavily on a public policy argument. In this respect, the Secretary asserts that by excluding the Debtor from the Medicare programs, she effectuated the public policy of protecting the beneficiaries of the Medicare programs.[2] In the Court's view, however, the Secretary's assertion is once again undermined by the obvious purpose of the statutory provisions upon which she relies. The legislative history to section 1320a–7 is particularly illuminating. It provides, in relevant part, as follows:

> The basic purpose of the Committee Bill is to improve the ability of the Secretary and the inspector general of the Department of Health and Human Services to protect Medicare, Medicaid, Maternal and Child Health Services Block Grant, and Title XIX Social Services Block grant programs from *fraud and abuse, and to protect the beneficiaries of those programs from incompetent practitioners and from inappropriate or inadequate care.*

S.Rep. No. 100–109, 100th Cong., 1st Sess., 1–2, reprinted in 1987 U.S.Code Cong. & Admin.News 682.

The Secretary does not allege that any action of the Debtor involving the Medicare programs constituted fraud. Nor does the Secretary allege that the Debtor abused the Medicare programs.[3] After reviewing the remaining provisions of section 1320a–7, the Court does not believe anything in the record suggests that the Debtor is guilty of the various types of "fraud or abuse" Congress was concerned about when section 1320(a)(7) was enacted.

---

**2.** The intended beneficiaries of the Medicare programs are the needy, and medically needy, aged, blind, and disabled. S.Rep. No. 404, 98th Cong., 1st Sess. (1965), U.S.Code Cong. & Admin.News 1965 p. 305.

**3.** The Secretary summarized the statutory grounds for exclusion of a health care provider from the Medicare programs as follows: Section 1320a–7 sets forth 16 separate and independent bases, including subsection (b)(14), upon which the Secretary may exclude health care providers and practitioners from participation in the Medicare and State health care programs. Grounds for exclusion under this section include various types of criminal convictions, such as those relating to the delivery of a health care item or service, fraud, and controlled substances. *See,*

*e.g.,* 42 U.S.C. §§ 1320a–7(a), (b)(1), (b)(3). Also included as grounds for an exclusion from the Medicare and State health care programs are sanctions imposed by a State licensure board and the failure of an individual or entity to supply requested information to government investigators. *See* 42 U.S.C. §§ 1320a–7(b)(4), (b)(9), (b)(10), (12). Lastly, section 1320a–7 authorizes the Secretary to exclude an individual or entity if he or she has submitted claims for excessive charges, medically unnecessary services or services that do not meet professionally recognized standards of health care, as well as for certain other prohibited activities, including false claims and kickbacks. *See* 42 U.S.C. §§ 1320a–7(b)(6)–(7).

It is also particularly noteworthy that HHS does allege that the Debtor is either an incompetent practitioner or that she provided inappropriate or inadequate care to her patients. In the absence of any allegation of fraud, abuse, or that the Debtor provided inappropriate or inadequate care to her patients, the Court is led inexorably to the conclusion that by excluding the Debtor from the Medicare programs the Secretary was not attempting to effectuate public policy, but rather was protecting the government's private (pecuniary) interests. Thus, under the public policy test, the Court concludes that the Secretary's exclusion of the Debtor from the Medicare programs was not an exercise of governmental police or regulatory power.

Having concluded under both the pecuniary interest test and the public policy test that the Secretary's exclusion of the Debtor from the Medicare programs was not an exercise of governmental police or regulatory power, the Secretary's actions do not constitute an exception to the automatic stay. Accordingly, the Debtor is correct that her exclusion from participation in the Medicare programs violated the automatic stay.

### Is the Debtor entitled to sanctions for contempt?

In seeking damages, the Debtor relies on section 362(h), which provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages.

11 U.S.C § 362(h).

■ Section 362(h) requires a *willful violation* of the stay. "A willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the auto-

matic stay were intentional." *In re Atlantic Business and Community Corp.*, 901 F.2d 325, 329 (3d Cir.1990), citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989).

■ At first blush, HHS' actions appear to satisfy the above definition of a willful violation. HHS was aware the Debtor filed her Chapter 13 petition on October 5, 1994. With that knowledge, HHS excluded the Debtor from participation in the Medicare programs on October 6, 1994, consistent with its exclusion notice dated September 16, 1994. The analysis does not, however, end here.

In *University Medical Center*, the Third Circuit addressed the issue of whether HHS had properly withheld moneys owed a debtor-health care provider for post-petition services covered under the Medicare Act to abate an obligation of the debtor to HHS arising from overpayment made by HHS to the debtor pre-petition. The Court recognized that because the application of the automatic stay was sufficiently uncertain, HHS could have believed its actions to be in accord with the stay. *Id.*, 973 F.2d at 1088. After determining that statutory direction and case law supported the actions of HHS, the Third Circuit concluded that the actions of HHS were not "willful" as the court had defined that term in *Atlantic Business*.

This Court has been unable to locate any published decisions discussing whether excluding a debtor from participating in the Medicare programs is violative of the stay.[4] HHS cites the Court to *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918 (Bankr. N.D.Cal.1994), wherein the court in dicta, stated that HHS could properly determine the eligibility of a health care provider to participate in the Medicare system under the public policy test. While the Court has determined that exclusion of the Debtor from the Medicare programs does not effectuate public policy, upon consideration of the apparent absence of case law to the contrary,

---

4. HHS correctly points out that the Medicare program consists of two discrete components, Parts A and B. Part A providers, like the provider in *University Medical Center, supra*, operate under a contract, called a "provider agreement." *See* 42 U.S.C. § 1395cc. The intersection of Part A of the Medicare Act and the Bankruptcy Code has been considered by numerous courts.

The Debtor, however, operated under Part B of the Medicare Act, without a provider agreement. As noted, the Court has been unable to located any published decisions discussing the intersection of Part B of the Medicare Act and the Bankruptcy Code.

and considering that HHS relies on the complex statutory framework of the Medicare Act and other related statutes, this Court also concludes that HHS' action was not "willful" for purposes of section 362(h). Accordingly, the Debtor's request for damages pursuant to section 362(h) will be denied.

### 11 U.S.C. § 525(a)

The Debtor also argues that HHS may have also violated section 525(a) by excluding her from the Medicare programs. Section 525(a) provides, in pertinent part:

> ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or *other similar grant* to ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act ... *solely* because such bankrupt or debtor is or has been a debtor under this title, ... has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[5]

11 U.S.C. § 525(a) (emphasis added).

■ Even if the Debtor's access to the Medicare programs falls within the meaning of "other similar grant," the instant record does not support a conclusion that HHS excluded the Debtor from the Medicare programs solely because she was a debtor under title 11, or because she had been insolvent before the commencement of her case. To the contrary, it is abundantly clear on this record that the Debtor was excluded from participation in the Medicare programs because she defaulted on her obligation to repay her HEAL loans. HHS apparently followed statutorily required procedures, which eventually led to exclusion of the Debtor from the Medicare programs, and those procedures were initiated many months before the Debtor's bankruptcy. Accordingly, the Court finds that the provisions of section 525(a) have no applicability in the instant case.

An Order consistent with the foregoing conclusions accompanies this Opinion.

---

5. The Court notes that the Debtor's obligation to repay the HEAL loans appears to be nondis-

### ORDER

**AND NOW,** this 25th day of July, 1995, upon consideration of Motion of the Debtor, Jeanmarie Rusnak (the "Debtor"), seeking to recover damages from the United States Office of Personnel Management and the Secretary of the United States Department of Health and Human Services (collectively "HHS" or the "Secretary") for violation of the automatic stay (the "Motion"), the Secretary's Answer, and the Memoranda of Law and Stipulation of Facts submitted by the parties, and for reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Debtor's Motion for sanctions is Denied. It is further **ORDERED** that the Secretary shall immediately reinstate the Debtor's privileges to participate in the Medicare, Medicaid and other State health care programs from which the Debtor was excluded on October 6, 1994. A follow-up status hearing shall be held in this case on August 10, 1995, at 9:30 a.m. in Bankruptcy Courtroom # 3 to consider any and all matters related to the Debtor's continuing participation in the programs.

chargeable. See 11 U.S.C. §§ 523(a)(8), 1328(a) and 42 U.S.C. § 292f(g).