**In re Mark E. MOSS, Debtor.**

**No. 01–21609.**

United States Bankruptcy Court, W.D. New York.

Dec. 11, 2001.

---

David H. Ealy, Esq., Shapiro, Rosenbaum, Liebschutz & Nelson, Rochester, NY, for Debtor.

Christopher V. Taffe, Assistant U.S. Attorney, Rochester, NY, for U.S. Government.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On April 27, 2001, Mark E. Moss, a Dentist and Assistant Professor of Dentistry at the University of Rochester (the "Debtor"), filed a petition initiating a Chapter 13 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor: (1) scheduled $268,862.00 of unsecured indebtedness, including unpaid 1980 through 1984 Health Education Assistance loans in the amount of $237,954.00 (the "HEAL Loans"), and a 1980 student loan in the amount of $10,348.00 (the "Student Loan"); (2) indicated that pursuant to a November 1, 1999 Writ of Continuing Garnishment entered in the United States District Court for the Western District of New York ("District Court") in connection with his unpaid HEAL Loans, since December 1999, the United States Government (the "Government") had garnished his wages in the total amount of $17,703.00; (3) indicated that he had been employed at the University of Rochester (the "University") as an Assistant Professor of Dentistry for six years and his current gross monthly salary was $6,875.00; and (4) indicated that he was married and his spouse's current gross monthly salary was $2,110.00.

The Debtor's proposed Chapter 13 Plan (the "Plan"), dated April 18, 2001, provided in part that: (1) he would make monthly payments of $1,635.00 to the Trustee for sixty (60) months by wage order; and (2) from the monthly payments there would be paid: (a) Chapter 13 Trustee's fees; (b) an attorney's fee in the amount of $2,000.00; (c) payment in full with interest of the $21,920.00 loan for the Debtor's 2000 Hyundai; and (d) an estimated twenty-six percent (26%) pro rata distribution to unsecured creditors.

On June 8, 2001, the Government filed a claim, which asserted that there was $242,020.91 due on a March 8, 1998 judgment obtained in the District Court for the Debtor's unpaid HEAL Loans (the "HEAL Loans Judgment").

On June 11, 2001, no one appeared on behalf of the Government at the Debtor's Section 341 Meeting or Confirmation Hearing, no objections to the confirmation were filed by the Trustee or any creditor and the Court orally confirmed the Plan. At the Confirmation Hearing the Trustee estimated, based upon the claims filed to date, that there would be a twenty-three percent (23%) distribution to unsecured creditors including the Government on the HEAL Loans Judgment and the Student Loan.

At the Confirmation Hearing, the Debtor: (1) indicated that his reasons for filing a Chapter 13 case were: (a) the HEAL Loans garnishment; (b) his desire to pay back creditors as much as possible; and (c) his unpaid student loans; and (2) did not advise the Court or the Trustee that he had been excluded from participation in all Medicare, Medicaid and other federal health care programs and federal assistance, benefit and procurement programs.

On June 20, 2001, an Order confirming the Plan was entered.

On October 25, 2001, the Debtor filed a Motion for Determination that the Debarment and Exclusion are Stayed (the "Debarment Motion"). The Motion asserted that: (1) the Debtor was employed at the University since December 1997; (2) prior to the filing of his petition, the Debtor's wages were being garnished by the Government at the rate of $1,187.96 per month, which represented twenty-five percent (25%) of his net income after payroll deductions [1]; (3) in December 1998, because of his failure to pay his HEAL Loans or enter into a satisfactory repayment arrangement, the Debtor was excluded from participation in Medicare, Medicaid and all federal health care programs (the "Exclusion"); (4) in March 1998, because of his failure to pay his HEAL Loans or enter into a satisfactory repayment arrangement, pursuant to 5 CFR 970, the Debtor was debarred from participating in both federal financial and non-financial assistance and benefit programs (non-procurement) and federal contracting (procurement) (the "Debarment"); (5) the Debtor's Exclusion and Debarment were acts taken by the Government solely for the purpose of collecting the Debtor's unpaid HEAL Loans; (6) the continuing post-petition Exclusion and Debarment violated the automatic stay provided for by Section 362 (the "Stay"), specifically the provisions of Section 362(a)(1), (3) and (6) [2], in that they were continuing acts to collect and recover the Government's pre-petition claim against the Debtor; (7) on October 11, 2001, because of the Debtor's Exclusion and Debarment, the University placed him on administrative leave, and advised him that if the Debarment were not removed he might be terminated; (8) the confirmed Plan provided for a greater repayment on the HEAL Loans Judgment over its five-year term than the Government would receive from its pre-petition garnishment [3]; (9) the Exclusion and Debarment substantially impeded the Debtor's ability to earn the income necessary to complete his Chapter 13 Plan; (10) the Government had taken the position that the Exclusion and Debarment were not affected by the Stay;

---

1. This represents 17.27% of the Debtor's current gross monthly wages.

2. Sections 362(a)(1), (3) and (6) provide that: (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]
11 U.S.C. § 362 (2001).

3. This assertion of the Debtor is incorrect. At the time of confirmation, the Trustee estimated that the unsecured creditors would receive a twenty-three percent (23%) distribution. On the Government's $242,020.91 claim, it would receive a maximum monthly distribution over sixty (60) months of $927.75. This is significantly less than the $1,187.96 it had been receiving monthly on its pre-petition garnishment. Even utilizing the Debtor's scheduled amount of $237,954.00 and the Plan's pre-confirmation estimated twenty-six percent (26%) distribution, the maximum monthly distribution would be $1,031.13, which is also less than the pre-petition garnishment. In addition, the garnishment might increase with any increases in wages received by the Debtor, whereas the Plan distribution is fixed.

and (11) if the Court were to determine that the Exclusion and Debarment were not stayed, the Debtor would have no alternative but to convert his Chapter 13 proceeding and enter into a settlement agreement for the repayment of the HEAL Loans Judgment.

On November 14, 2001, the Government interposed Opposition to the Debarment Motion which asserted that: (1) even after the Debtor had been Excluded and Debarred, he failed to contact the U.S. Attorneys Office or the Government in order to attempt to negotiate an agreement to repay his HEAL Loans; (2) the Stay did not apply after the Plan was confirmed; (3) the Exclusion and Debarment were completed pre-petition, and the Stay did not operate to nullify the pre-petition, fully completed administrative actions which resulted in the Debtor's Exclusion and Debarment; (4) Federal Courts, including Bankruptcy Courts, did not have jurisdiction over Medicare and Medicaid reimbursement disputes, unless and until the Debtor had exhausted any and all possible administrative remedies regarding his Exclusion, which the Debtor had not done; and (5) the Exclusion and Debarment were not stayed because they were acts to enforce the Government's police and regulatory power.[4]

At a November 19, 2001 hearing on the Debarment Motion, the Court: (1) learned that upon receiving notice of the Debtor's bankruptcy, the Government had withdrawn its garnishment; (2) learned from the attorney for the University that after his Debarment in 1998 the Debtor was able to continue to work on federal grant research projects at the University because he had stated in questionnaires he filled out in connection with the projects that he had not been Debarred; (3) heard from the Debtor that he had previously indicated to the University that he had not been debarred because he misunderstood the difference between his Exclusion and Debarment, not realizing that Debarment made him ineligible to be paid from federal government grant research projects; and (4) reserved decision, and promised the parties a Decision & Order, if possible, before the Debtor's sixty-day administrative leave period expired on or about December 11, 2001.

The Debtor's November 27, 2001 Post–Hearing Memorandum of Law alleged that: (1) the Government would receive more on the Debtor's unpaid HEAL Loans under the confirmed Plan than if it continued to garnish the Debtor's wages over the sixty-month term of the Plan; (2) in his current employment the Debtor did not participate in any Medicare, Medicaid or other federal health care programs, so his Exclusion did not affect his employment; (3) the Debtor was not aware of the full extent of the implications of his Debarment until the University: (a) commenced an independent investigation post-petition and discovered the Debarment; (b) explained to him the full implications of the Debarment as it related to his eligibility to be paid from federal grant research projects; and (c) put him on administrative leave; (4) the University had advised the Debtor that in order to be reinstated, he was required to demonstrate to the University that he was no longer Debarred or otherwise prevented from working on and

---

4. Section 362(b)(4) provides that:
   (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

   (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]
   11 U.S.C. § 362 (2001).

receiving compensation from federal grant research projects; (5) the Debtor's Exclusion and Debarment were violations of the automatic stay provided for by Sections 362(a)(1) and (a)(6), in that they were: (a) administrative actions of a continuing nature taken for the purpose of collecting and recovering on the Government's pre-petition HEAL Loans Judgment; and (b) continuing acts to collect or recover a pre-petition claim against the Debtor; (6) in a Chapter 13 case, the Stay did not terminate as to pre-petition claims until the earliest of the time the case is closed, the time the case is dismissed, or a discharge is granted or denied; [5] (7) even though the Bankruptcy Court might not have jurisdiction under the relevant statutes and regulations to determine the validity or invalidity of the Exclusion or Debarment, which the Debtor was not contesting, the Court did have jurisdiction to determine whether the post-petition continuance of the Debtor's Exclusion and Debarment violated the Stay; and (8) the purpose of the Debtor's Exclusion and Debarment were directly related to the Government's pecuniary interest in having the HEAL Loans Judgment paid, and were not designed to promote the public health and safety or a non-pecuniary-related public policy.

In a November 28, 2001 Post–Hearing letter brief, the Government alleged that: (1) Section 362(a)(3) did not apply to the facts and circumstances of this case because the Debtor had no property interest or right after his Exclusion and Debarment to participate in any covered programs, so that the Exclusion and Debarment did not constitute acts to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate; (2) the Exclusion and Debarment administrative proceedings were complete and final as of March 24, 1998, so that the provisions of Section 362(a)(1) were not applicable; (3) as of the date of the filing of his petition, because of his Debarment, the Debtor had no right to participate in any federal grant research programs, and his act of filing a bankruptcy petition should not afford him that right; and (4) if the Bankruptcy Court were to vacate the Debarment, it would be a violation of 42 U.S.C. § 405(h).[6]

In a December 6, 2001 letter to the Court, the attorney for the Debtor asserted that, "the amount to be repaid to the Government under the plan exceeds the amount that would have been paid under a pre-petition agreement proposed by the Secretary," but provided no details regarding any such proposed agreement.

### DISCUSSION

#### I. Overview of the Chapter 13 Case

The Debtor who: (1) acknowledges that he has not paid his HEAL Loans or the Student Loan that he incurred in the

---

**5.** Section 362(c)(2) provides that:

(c) Except as provided in subsections (d), (e), and (f) of this section—
(2) the stay of any other act under subsection (a) of this section continues until the earliest of—
(A) the time the case is closed;
(B) the time the case is dismissed; or
(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362 (2001).

**6.** Section 405(h) provides that:

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer of employee thereof shall be brought under § 1331 or § 1336 of Title 28 to recover on any claim arising under this subchapter. 42 U.S.C. § 405 (2001).

1980's; (2) does not contest that he was properly Excluded and Debarred from participating in various Government programs, including participating in and getting paid from federal grant research projects; (3) has never made a satisfactory arrangement with the Government for the repayment of his HEAL Loans, either before or after his Exclusion and Debarment; (4) gave false information regarding his Debarment to the University, which allowed him to work on and get compensated from federal grant research projects that he otherwise would not have been allowed to participate in; and (5) never indicated to the Court, the Chapter 13 Trustee, or his other creditors, either in his Plan or at the Confirmation Hearing, that he had been Excluded and Debarred and might require the Debarment to be vacated for the term of the Plan in order to make it feasible, has requested that the Court: (1) determine that his continuing Debarment violates the Stay; and (2) vacate the Debarment for the remaining term of the confirmed Plan.

Before the Court addresses the legal issue of whether the Debarment violates the Stay, an overview of the Debtor's Chapter 13 case is warranted. The following additional facts and circumstances are significant:

1. At the termination of the Debtor's Plan, the only financial rehabilitation he will have accomplished is that he will have: (a) paid off his $21,920.00 automobile loan with interest at 7.04% per annum; and (b) obtained a discharge from his $20,560.00 of dischargeable unsecured debts by paying those creditors a total of $4,728.80. On the other hand, if the proof of claim filed by the Govern-

ment is correct, at the termination of his Plan, the Debtor will owe more on the HEAL Loans Judgment than he did at the inception of the Plan. The proof of claim filed by the Government indicated that: (a) the principal balance on the HEAL Loans Judgment at the time of the filing of the Debtor's petition was $241,127.91; and (b) the Judgment bears interest at the rate of 5.407% per annum or $35.72 per day. Since the HEAL Loans Judgment is nondischargeable, interest will continue to accrue on the $241,127.91 principal balance until paid in full. Even if any unpaid interest is not further capitalized, utilizing a 30-day month, the monthly accrued interest alone is $1,071.60. As discussed above, the maximum monthly distribution the HEAL Loans Judgment will receive under the Plan will be $927.75, leaving a monthly interest shortfall of $143.85. Therefore, there will be a negative amortization of the indebtedness; [7]

2. The Debtor has acknowledged that if the Court were: (a) to find that the Stay was violated by the Debtor's continuing Debarment and the Government's failure to vacate the Debarment; and (b) find that the Debarment was not in effect during the term of the Plan, or take the extraordinary action of vacating the Debarment during the Plan, at the termination of the five-year Plan the Debarment would spring back into existence. Therefore, at the termination of the Plan: (a) there will be significant unpaid balances due on the nondischargeable HEAL Loans

7. It is not possible to determine from the proof of claim filed in connection with the Student Loan whether there will be a negative amortization of the Loan. However, it is clear that at the termination of the Plan there will still be a significant balance due on that Loan.

Judgment and the Student Loan, which may be higher in each case than the unpaid balance at the inception of the Plan; (b) the Debarment will spring back into existence; and (c) any attempt by the Debtor to file a subsequent Chapter 13 or Chapter 11 case with a plan that did not provide for the full payment of all of these nondischargeable student loans would most likely be found to be in bad faith;

3. Although the Debtor has chosen to practice his profession by working at a University Hospital and participating in federal grant research projects, his Exclusion and Debarment do not prevent him from making a living and supporting his family. The Debtor could, for example, work in a private dental practice treating patients that do not pay in whole or in part through Medicare or Medicaid;

4. The Government did not object to the Plan on good faith or feasibility grounds at the time of confirmation, even though, as analyzed above, the Plan: (a) does not appear to amortize the Government's Judgment; (b) affords the Government a less favorable treatment than if it continued to receive its pre-petition garnishment, which at ·$1,187.96 per month would at least appear to reduce the Government's Judgment balance; and (c) does not result in the overall financial rehabilitation of the Debtor. The Government may have made such an objection if the Debtor had advised the Government, the Court and the Trustee that his Debarment would have to be vacated in order for him to be able to complete the Plan, and the Court, on the facts and circumstances presented, may have sustained the objection;

5. The current threat to the Debtor's employment did not result from any affirmative post-petition actions taken by the Government. It resulted from an independent investigation initiated and conducted by the University that previously received false statements from the Debtor concerning his Debarment; and

6. There is no evidence in the record or allegation made that the Government knew when it garnished the Debtor's wages that they were being paid to him in whole or in part because of his work on federal government grant research projects.

## II. The Automatic Stay Provided for by Section 362

### A. *Case Law*

It has been said about the automatic stay provided for by Section 362 that:

1. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy ..." *In re AP Industries, Inc.*, 117 B.R. 789 (Bankr.S.D.N.Y.1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 49 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5835, 6296–97);

2. The automatic stay is "designed to effect an immediate freeze of the status quo by precluding and nullifying *post*-petition actions, judicial or

non-judicial, in non-bankruptcy for [or] against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir.1993) (emphasis added);

3. The protections afforded by the Bankruptcy Code, such as the automatic stay, operate as a shield and not a sword. *See In re Braniff Intern. Airlines, Inc.,* 159 B.R. 117 (citing *Merchants & Farmers Bank of Dumas, Ark. v. Hill,* 122 B.R. 539, 546 [E.D.Ark.1990] ); and

4. Acts taken in violation of the Stay are void. *See Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522 (2d Cir.1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.,* 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988)). However, under Section 362(d), in appropriate circumstances, the Court, in its discretion, can annul the Stay.[8] *See In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992); *Job v. Calder (In re Calder),* 907 F.2d 953, 956 (10th Cir.1990) (per curiam); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.,* 835 F.2d 427 (2d Cir. 1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984); *Riedel v. Marine Midland Bank,* 1997 WL 176306 (N.D.N.Y.1997); *In re Bres-*

*ler,* 119 B.R. 400 (Bankr.E.D.N.Y. 1990).

In support of many of his arguments the Debtor has referred the Court to the decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania in *In re Rusnak,* 184 B.R. 459 (Bankr.E.D.Pa.1995) (*"Rusnak "*). In *Rusnak,* the Debtor, a podiatrist, filed a Chapter 13 case the day before her exclusion was to become effective for the principal purpose of stopping the exclusion. When the Government insisted that the exclusion had become effective post-petition and would not withdraw it, the Debtor brought a motion to have the Court determine that the Government had violated the Stay. The Bankruptcy Court's decision in *Rusnak:* (1) found that the Court had jurisdiction to determine whether by permitting the debtor's exclusion to become effective post-petition and not withdrawing it, the Government had violated the Stay, notwithstanding the provisions of 42 U.S.C. § 405(h), because there was an independent basis for jurisdiction; (2) determined that exclusion, solely because a debtor had failed to pay her HEAL loans and not because she had in any way acted fraudulently in connection with any government program, did not implicate the Government's police or regulatory power, nor did it promote a legitimate, non-pecuniary, public policy, so that the post-petition exclusion was not excepted from the operation of the stay pursuant to Section 362(b)(4); and (3) determined that the post-petition exclusion of the debtor was a violation of the Stay, although not willful.[9]

8. Section 362(d)(1) provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]
11 U.S.C. § 362 (2001).

9. The decision was made after the debtor's Chapter 13 case had converted to a Chapter 7 case, so that as a practical matter the exclusion would become effective in any event as

## B. *Jurisdiction*

■ I agree with the Debtor that on the facts and circumstances presented, where the Debarment proceeding was completed and the Debarment was effective pre-petition that: (1) there is an independent basis of jurisdiction and this Court can and must[10] determine whether the failure of the Government to withdraw the Debarment during the term of the Plan violates the Stay[11]; and (2) such a determination by the Court would not violate 42 U.S.C. § 405(h), since it is not a determination of: (a) any amounts due in connection with any services performed for any government program; or (b) the pre-petition statutory and regulatory validity of the Exclusion or Debarment, because the Debtor has not contested that: (i) the Exclusion and Debarment resulted from the proper exercise of the Government's statutory and regulatory authority; (ii) he had exhausted or waived all of his administrative and appeal rights with respect to the Exclusion and Debarment; and (iii) the Debarment became final in March 1998, more than three years prior to the filing of his petition.

## C. *Section 362(a)(3)*

■ It could be argued that the Debtor, between the time of the filing of the Debarment Motion and his Post–Hearing submissions, abandoned the argument that the failure of the Government to withdraw the Debarment violated the Stay provided for by Section 362(a)(3). To the extent that the Debtor has not abandoned that argument, I agree with the Government that the Stay provided for by Section 362(a)(3) has not been violated. Any right of the Debtor to participate in and be compensated for his participation in government programs was fully and completely terminated pre-petition by the Exclusion and Debarment, which the Debtor never contested and does not now contest. Therefore, at the time of the filing of the petition, there were no property rights or interests of the Debtor or the bankruptcy estate to participate in any government programs that the Stay could protect.

## D. *Section 362(a)(1)*

■ I agree with the Government that neither the post-petition continuing existence of the Debarment, nor the failure of the Government to withdraw it, constitutes the continuation of the administrative proceedings brought by the Government that resulted in the Exclusion and Debarment. Even though in this case these administrative proceedings were actions by the Government designed to collect and recover the amounts due on the Debtor's unpaid HEAL Loans, they were fully completed pre-petition over three years prior to the bankruptcy filing in March 1998, when all appeal rights had been waived, and no further actions in those proceedings were taken after March 1998.

■ Conceptually, the continuing existence of the Debarment can be analogized to a pre-petition judicial judgment. For purposes of Section 362(a)(1), the mere existence of a pre-petition judgment is not viewed as a continuing judicial action or

---

soon as the debtor's discharge was granted in the Chapter 7 case.

**10.** As discussed above, the automatic stay is one of the fundamental policies and protections of the Bankruptcy Code which is meant to be broad in its scope and Bankruptcy Courts must be vigilant in enforcing it.

**11.** The Court is aware of the Decision of the United States District Court for the Western District of Kentucky in *United States, Dept. of Health and Human Services v. James,* 256 B.R. 479 (W.D.Ky.2000), which held that the Federal Courts have no jurisdiction in such circumstances.

proceeding to recover the underlying claim, if the creditor takes no post-petition actions to actually enforce or collect the judgment. This is so even though the judgment may have negative financial consequences for the Debtor. For example, it could result in a negative credit report or could become a lien on real property.

A pre-petition judgment may be avoided on a number of grounds in a bankruptcy case, but not because its existence violates the Stay provided for by Section 362(a)(1), and a judgment creditor is not required to vacate a pre-petition judgment on such a theory.

### E. Section 362(a)(6)

Section 362(a)(6) stays any affirmative act to collect or recover a prepetition claim. In addition, some Bankruptcy Courts have held that the failure to terminate certain pre-petition collection remedies, such as the administrative suspension of a debtor's driver's license until a debtor has paid a debt, also violates the Stay provided for by Section 362(a)(1). See In re Duke, 167 B.R. 324 (Bankr. D.R.I.1994).

The only affirmative acts the Government took post-petition in the Debtor's Chapter 13 case were to: (1) withdraw its pre-petition garnishment; (2) file a proof of claim; and (3) oppose the Debtor's Debarment Motion. The Government took no post-petition actions in connection with the Debtor's Exclusion and Debarment, in fact it took no actions to enforce the Exclusion or Debarment after March 1998 when they became final.

If you: (1) start with the fact that the Debtor's Exclusion and Debarment were actions taken by the Government to collect and recover the amounts due on the Debtor's unpaid HEAL Loans; (2) metaphysically conceive of the Debarment as a continuing act to collect and recover the Debtor's unpaid HEAL Loans as long as it is in existence, even if the Debtor was unconcerned about it pre-petition; (3) acknowledge that the Stay is meant to be interpreted broadly; and (4) read the statute literally, you could conclude that the mere existence of the Debarment postpetition is technically a continuing act to collect and recover on the Government's unpaid HEAL Loans Judgment, and, therefore, a violation of the Stay. I believe that such a metaphysical analysis in this case would be reading too much into the language and intent of Section 362(a)(6).

Furthermore, in order to reach that conclusion, one would also have to ignore the overall equities presented and how the facts and circumstances of the Debtor's case relate to the underlying purposes for the Stay.

As discussed above, the Stay was enacted to: (1) preserve the status quo for the benefit of the Debtor, the bankruptcy estate and the creditors of the estate; (2) prevent any actions against the Debtor's property or property of the estate; (3) prevent the continuing harassment of the Debtor; and (4) prevent actions by creditors that would negatively impact on the Bankruptcy Code's policy of equality of distribution.

The continuing post-petition existence of the Debarment does not frustrate any of the underlying purposes for the enactment of the Stay in that: (1) the Debtor's status with respect to participating in government programs did not change from his status as of March 1998, three years prior to the filing of his petition, which he accepted and never contested or attempted to have vacated by entering into a satisfactory agreement for the repayment of the Heal Loans Judgment; (2) it is not an affirmative act by the Government to in any way harass the Debtor or force him to

pay the Government's pre-petition claim which was fully provided for in the Plan; it simply maintained the status quo; (3) no property of the Debtor or property of the bankruptcy estate was affected; and (4) it did not in any way alter the relationships between the Government's claim and the claims of the Debtor's other creditors.

In addition, given the facts and circumstances presented, if this Court were to find that the mere post-petition existence of the Debarment, with no other affirmative post-petition actions having been taken by the Government against the Debtor, was a violation of the Stay which required that the Debarment be vacated for the term of the Plan, the automatic stay would clearly and improperly have been utilized as a sword rather than as a shield.

Therefore, I find that the mere post-petition existence of the Debarment and the Government's failure to remove it for the term of the confirmed Plan is not a violation of the Stay provided for by Section 362(a)(6).

### F. Sections 362(h), 105 and 362(d)(1)

Section 362(h) provides that:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362 (2001).

Section 105 provides that:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105 (2001).

Even if the mere post-petition existence of the Debarment and the Government's failure to vacate the Debarment during the term of the confirmed Plan could be found

to be technical violations of the Stay as continuing acts to collect and recover the Government's nondischargeable pre-petition claim, on the facts and circumstances presented, this Court would not: (1) find that the Debtor had any actual damages under Section 362(h); (2) fashion a contempt remedy under Section 362(h) that would require the Government to vacate the Debarment; or (3) find it to be in the proper exercise of its discretion under Section 105 to require the Government to vacate the Debarment.

■ The Debtor: (1) does not contest that the Government, in the proper exercise of statutory and regulatory authority, Debarred him in March 1998, more than three years prior to the filing of his Chapter 13 petition; (2) does not deny that he never made a satisfactory repayment arrangement with the Government after his Debarment; (3) gave false statements to the University regarding his Debarment; (4) proposed and had confirmed a Plan that did not address his Debarment, even though the Debarment had continued post-petition; (5) proposed and had confirmed a Plan that results in the Government's HEAL Loans Judgment having a higher balance at the termination of the Plan than at its inception; and (6) does not have a need to participate in the programs he has been Debarred from in order to make a living. As such, the Debtor has not suffered any damages recognizable under Section 362(h), even if there may have been a technical violation of the Stay.

■ Furthermore, this Court, on the facts and circumstances presented, does not believe that, if the mere post-petition existence of the Debarment and the failure of the Government to remove the Debarment during the term of the confirmed Plan could be found to be technical violations of the Stay, the Debarment would, by

operation of law, be deemed not to be in effect during the term of the Plan on the theory that acts in violation of the Stay are void.

However, if such an argument could be made, this Court, on the facts and circumstances presented, believes that the more appropriate action would be, if the Government requested such relief under Section 362(d), to exercise its discretion to annul the Stay as to the Debarment, effective as of the date of the filing of the Debtor's petition.

### *CONCLUSION*

The failure of the Government to withdraw the Debtor's pre-petition Exclusion and Debarment does not constitute a violation of the stay provided for by Section 362.

**IT IS SO ORDERED.**