In re LAWSON BURICH ASSOCIA-
TION, INC., d/b/a Lawson Life
Extension Institute, Debtor.

LAWSON BURICH ASSOCIATES, INC.,
d/b/a Lawson Life Extension
Institute, Plaintiff,

v.

David AXELROD, New York State Com-
missioner of Health, and John Doe,
New York State Department of Health,
New York State Department of Social
Services and Haym Salomon Home For
the Aged, Defendants.

LAWSON BURICH ASSOCIATES, INC.,
d/b/a Lawson Life Extension
Institute, Plaintiff,

v.

David AXELROD, individually and as
Commissioner of Health of the State of
New York, Raymond Sweeney, individ-
ually and as Executive Deputy Director
of the Office of Health Systems
Management, New York State Depart-
ment of Health, New York State De-
partment of Health, New York State
Department of Social Services, Olga
Lipschitz and Haym Salomon Home
For the Aged, Defendants.

Bankruptcy No. 82 B 11005.
Adv. Nos. 82–5740A, 85–5761A.

United States Bankruptcy Court,
S.D. New York.

April 4, 1986.

Nachamie, Kirschner, Levine, Spizz & Goldberg, P.C., (Alex Spizz, New York City, of counsel), for debtor.

Robert Abrams, Atty. Gen. by Gerald Slotnik, Asst. Atty. Gen., New York City, for defendants.

Rogers, Hoge & Hills (Ted Semaya, New York City, of counsel), for Haym Salomon Home for the Aged.

Law Offices of Jules Teitelbaum, for Creditors' Committee, New York, New York 10003 By: (Gary Ginsburg, New York City, of counsel), for Creditors' Committee.

## MEMORANDUM DECISION AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

The court here addresses two adversary proceedings commenced by Lawson Burich Associates ("Lawson" or "Debtor") regarding Lawson's position as the former receiver and operator ("Receiver") of the Haym Salomon Home for the Aged (the "Home").

Each adversary proceeding relates to aspects of the same transactions and agreements between Lawson and the New York State Department of Health (the "Department"). In light of the similarity in the identities of the parties to the actions, as well as in the factual and legal issues raised, the court deems it appropriate and most expeditious to rule on both adversary proceedings, and the motions made therein, concurrently.

## FACTS

Prior to the filing of its Chapter 11 petition, Lawson was acting as Receiver of the Home, a residential health care facility created pursuant to the New York Public Health Law ("PHL") § 2801–a. Lawson acted as receiver of the Home pursuant to a receiver agreement, *see* PHL § 2810(1), executed by Lawson, the Department, and the Home on or about March 21, 1980. The agreement was by its terms to terminate on March 21, 1981, but was extended by a series of extension agreements through June 1, 1982.

By letter dated May 26, 1982, the Department informed Lawson and its principals that it would not further extend the receiver agreement and that the agreement would therefore be terminated effective midnight June 1, 1982. The Department's May 26 letter alleged a negative recommendation regarding character and a failure to document, as required by the extension agreement, repayment of monies withdrawn from the receivership in anticipation of receiver fees.

After issuance of this letter and on May 27, 1982, the Department filed an order to show cause with the New York State Supreme Court, Kings County (the "State Court"), seeking, *inter alia*, an order pursuant to PHL § 2810(2) appointing the Commissioner of Health, David Axelrod ("Commissioner Axelrod"), to act as temporary Receiver of the Home.

On June 1, 1982 and prior to commencement of the State Court hearing on the Department's order to show cause scheduled for that date, Lawson filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.

It is apparent that Lawson's Chapter 11 petition was filed in an effort to preclude the termination of the receivership from becoming effective and in order to seek the protection afforded by the Code § 362 automatic stay and the Code §§ 542 and 543 turnover provisions. As previously indicated, prior to the filing of the petition, the Department had given the notice required to terminate Lawson's position as Receiver of the Home. Lawson's petition was filed less than 15 hours before the stated midnight termination of its receivership and less than an hour prior to the scheduled time of the State Court hearing regarding the appointment of a new Receiver.

The termination of the receivership and the operation of the Home were hotly litigated, by the parties in both the Bankruptcy Court and the State Court during the 48 hours immediately following the filing of the Chapter 11 petition. At the onset of the June 1 hearing on the Department's order to show cause before the State Court Justice Joseph J. Dowd, the Debtor's counsel informed the State Court that the Chapter 11 petition had just been filed and that in counsel's view the State Court proceedings were stayed pursuant to Bankruptcy Code § 362(a). Justice Dowd proceeded to hear oral argument and during the luncheon recess the Debtor commenced an adversary proceeding in the Bankruptcy Court seeking an order explicitly staying the State Court proceedings as well as an order holding Commissioner Axelrod, the Attorney General and Justice Dowd in contempt. Bankruptcy Judge Roy Babitt signed an order to show cause regarding the alleged violations of the automatic stay returnable on June 2, 1982. However, Judge Babitt declined to issue a temporary restraining order pending the June 2 hearing. After Justice Dowd was informed in the afternoon of June 1 that the Bankruptcy Court had not issued a temporary restraining order, Justice Dowd granted the Department's motion and appointed Com-

missioner Axelrod as temporary Receiver of the Home.[1]

At the June 2 hearing, Judge Babitt initially determined that the filing of the Chapter 11 petition operated to preclude the receivership's midnight termination and that there was no evidence to suggest any danger to the health, well-being, or safety of the Home's residents. Judge Babitt denied the application to punish for contempt but directed that Lawson be restored to its pre-petition status as Receiver. Thereafter, Judge Babitt denied the Department's motion for a stay pending appeal but, at the Department's request, issued a memorandum order to enable an immediate review of the denial of the stay. Judge Babitt then stayed his order until 3:00 p.m. on that same day. Following a chambers conference at Judge Babitt's initiation approximately one hour after he issued the order, Judge Babitt vacated the order and issued a second memorandum order which provided as follows:

"Following presentation of the legal positions, the court is satisfied that there is no basis on which to hold any of the cited respondents in contempt. The court declares that there is no automatic stay under § 362(a), as in the matter of the operation of nursing home facilities, peculiarly the province of state regulation, the court is particularly sensitive to the needs of the residents of those facilities & the state's proper exercise of its power —§ 362(b)(4). *The matter of the operation of this facility is left to unfold under applicable law & rules before either or both the proper administrative tribunals and the judicial tribunal.* It is so ordered." (Emphasis added).[2]

Approximately one hour after Judge Babitt's second order, the parties again appeared before Justice Dowd, at which time he was informed of the proceedings that had just transpired before Judge Babitt and was provided with copies of the two Bankruptcy Court orders. After hearing oral argument, Justice Dowd appointed Commissioner Axelrod as permanent Receiver of the Home and directed that all books, records and other items used in the operation of the Home be turned over by the Debtor. Thereafter, Commissioner Axelrod appointed Olga Lipschitz as his designee in respect to the actual day to day operation of the Home.

Following Justice Dowd's order placing Commissioner Axelrod in charge of the operation of the Home, Lawson pursued administrative remedies with respect to its termination as Receiver. A series of hearings were held between 1982 and 1984 before Administrative Law Judge Maureen J.M. Ely (the "ALJ") at the New York State Department of Health. In her report dated March 19, 1985, the ALJ concluded:

"It is recommended that the determination of bad character be reversed and that the financial feasibility of this application be re-evaluated by the Department based on updated and complete documentation and that the Department's recommendation be submitted to the Public Health Council for a decision." (ALJ report at 29).

## THE ADVERSARY PROCEEDINGS

As a companion to the automatic stay litigation, and on or about June 2, 1982, Lawson commenced a second adversary proceeding (Adversary Docket No. 82–5740A, hereinafter "Proceeding 1") seeking turnover of various assets of the Home. The basic premise of Proceeding 1 is that if the receiver agreement had been terminated, then various physical assets of the

---

1. Justice Dowd was of the view that his function was of a limited nature. His orders of June 1 and June 2, 1982 did not resolve the rights and obligations of the respective parties attendant to the receiver agreement but rather operated to ensure as a procedural matter that there was a receiver in place that would be responsible for the day-to-day operation of the Home.

2. Judge Babitt's order was affirmed on appeal by District Judge Sweet on June 29, 1983. *See In re Lawson Burich Associates, Inc. (Lawson Burich Associates, Inc. v. Axelrod, et al.)*, 31 B.R. 604 (Bankr.D.C.S.D.N.Y.1983).

Home and certain receivables were the property of the Debtor. In addition, Lawson sought to restrain the various defendants from obtaining or paying certain sums of money allegedly due the Debtor. The defendants in Proceeding 1 include Commissioner Axelrod, "John Doe," the Department, the New York State Department of Social Services, and the Haym Salomon Home for the Aged.

The property Lawson seeks to recover includes various physical assets of the Home purchased during Lawson's receivership, the value of which Lawson estimates at $300,000, and Medicaid and Medicare reimbursement monies for patient care in excess of $1.4 million earned while it acted as Receiver of the Home. The Department is of the view that the termination of the receivership agreement operated as a forfeiture of Lawson's right to receive the Medicare-Medicaid monies for the period of the receivership and that Lawson's entitlement to such monies, as well as the other assets, was dependent upon Lawson's acquisition of the Home, an event which could not occur unless and until Lawson received a permanent operating certificate, which it had not yet done. Lawson states that without the Medicare-Medicaid monies it will be unable to satisfy the debts incurred while acting as Receiver.

The Home filed an answer denying Lawson's allegations and raising two affirmative defenses: failure to state a claim upon which relief may be granted, and lack of jurisdiction. The Department, by notice of motion dated August 16, 1983, seeks, *inter alia*, to dismiss Proceeding 1, or in the alternative, to convert the bankruptcy case from Chapter 11 to Chapter 7. The Department also relies on numerous other grounds, including lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, failure to join necessary parties, the Eleventh Amendment, sovereign immunity, lack of standing, comity, and *res judicata*. The Department's motion has been opposed by both the Debtor and the Creditors' Committee.

A related adversary proceeding (Adversary Docket No. 85–5716A, hereinafter "Proceeding 2"), which was commenced by Lawson on or about May 1, 1985, seeks, *inter alia*, an order declaring the defendants' actions null and void as a violation of the automatic stay imposed by Code § 362(a), turnover, and reinstatement of the Debtor as Receiver of the Home. The defendants include Commissioner Axelrod, Raymond Sweeney, Executive Deputy Director of the Office of Health Systems Management, and the Department, the New York State Department of Social Services (the "State Defendants"), Olga Lipschitz and the owner of the Home (the "Non-State Defendants") (referred to collectively as the "Defendants"). The issues raised in Proceeding 2 are strikingly similar and integrally related to those raised in the automatic stay litigation finally resolved on appeal in 1983.

In addition, by Order to Show Cause dated May 9, 1985, Lawson seeks an order reinstating it as Receiver of the Home, and an order enjoining and restraining the Defendants, pending the determination of Proceeding 2, from taking any action to interfere with or prevent the Lawson's reinstatement and actions as Receiver of the Home.

By way of answer to Proceeding 2 and in response to Lawson's application, the Department has raised the defense of sovereign immunity, the Eleventh Amendment, *res judicata*, abstention, comity, and the failure to exhaust administrative remedies. The Department further asserts that Lawson has not established the elements necessary for injunctive relief. Since the court finds the Eleventh Amendment and the doctrine of sovereign immunity to be dispositive as to both Proceeding 1 and Proceeding 2, the court will primarily address those issues.

### DISCUSSION

A curious point regarding these two proceedings is that each appears to rely on a diametrically opposed premise. In Proceeding 1, commenced after Justice Dowd

appointed Commissioner Axelrod as temporary Receiver, Lawson assumes that the receiver agreement had been terminated and that its termination gives rise to the rights asserted in the turnover action. Lawson therefore seeks a determination of the rights and liabilities of the respective parties attendant to the terminated contract. Yet in Proceeding 2, Lawson strenuously urges that the receiver agreement was never in fact terminated and that this court should reinstate it as Receiver of the Home. Lawson chooses to de-emphasize the outcomes of the litigations before Justice Dowd and Bankruptcy Judge Babitt. Instead, Lawson focuses on the subsequent ALJ Report which failed to find sufficient evidence "bad character" or misappropriation of funds on the part of the Debtor and recommended a re-evaluation of the financial feasibility of Lawson's application to be appointed as Receiver of the Home.

It appears that the extent of the Debtor's interest in the property and monies sought to be turned over is far from clear. Lawson's claims as to its status as Receiver, the physical assets of the Home and the Medicaid-Medicare reimbursement monies are intimately connected with the terms of the receiver agreement. It thus appears that the court cannot separate out and rule on the merits of any portion of these proceedings without going into the realm barred by sovereign immunity.

In order to rule on the turnover aspects of these proceedings, it would be necessary for the court to adjudicate issues regarding the interpretation of the receivership agreement, a contract between Lawson and the State. Given the protection accorded the State by the doctrine of sovereign immunity and the Eleventh Amendment, New York State has the right to insist that the issues raised be resolved in another forum. Sovereign immunity and the Eleventh Amendment preclude this court from resolving the controversy regarding the operation of the Home, the receiver agreement, and the rights attendant thereto. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[3]

Lawson contends that since its bankruptcy petition was filed prior to the midnight termination deadline of the receiver agreement, Code § 105 confers the jurisdiction necessary to reinstate Lawson as Receiver of the Home, to restrain the Department from interfering with any such reinstatement, and to direct that the assets of the Home be turned over to Lawson.[4] Lawson urges the court to treat the temporary operating certificate, the Medicare-Medicaid reimbursement monies, and the assets of the Home as property of the estate, pursuant to Code § 541, and thus subject them to a turnover order pursuant to Code § 542. In addition, Lawson argues that the court should reinstate it as Receiver because the rulings of Justice Dowd, Judge Babitt, and the District Court were based on the Department's allegations subsequently determined to be erroneous by the ALJ.

3. In *Pennhurst,* the Supreme Court held that "federal courts [lack] jurisdiction to enjoin petitioner state institutions and state officials on the basis of ... state law." *Pennhurst,* 465 U.S. at 124–5, 104 S.Ct. at 921. The substantive issues raised in *Pennhurst* regarded the quality of care given to the mentally retarded residents of a state institution for the mentally retarded. *Pennhurst* is strikingly analogous to the case at bar in that Lawson's application seeks a federal court determination regarding the operation of the Home, a residential health care facility created pursuant to New York law. Lawson relies primarily on the New York State Public Health Law, which is arguably analogous to the reliance by the plaintiffs in *Pennhurst* on the Pennsylvania Mental Health and Mental Retardation Act of 1966. In both instances the relief

sought may drastically affect the public health and welfare of citizens, and as such is more properly the province of the state legislature and judiciary. *See also Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 458 (6th Cir.1982).

4. Bankruptcy Code Section 105(a) provides that "[t]he court may issue any order, process or judgment that is necessary or proper to carry out the provisions of this title."

The Creditors' Committee urges this court to find that the Debtor can press its claims in Proceeding 1 because of its property rights in the reimbursement monies and that jurisdiction exists in the bankruptcy court notwithstanding the Department's sovereign immunity defense.[5] At the time the motion was made the Creditors' Committee specifically declined to take any position regarding the Department's alternative request to convert the bankruptcy case to Chapter 7. The fence-straddling approach on the part of the Creditors' Committee at that time is understandable in that the Debtor's receiver agreement appeared to have been terminated and an indictment was pending against one of the debtor's former principals.[6]

■ Although Code § 105(a) grants broad powers to the bankruptcy court, it does not allow the court to set aside state court orders. *See In re Mastercraft Record Plating, Inc.,* 39 B.R. 654, 658 (Bankr.D.C.S.D.N.Y.1984), reversing 32 B.R. 106 (Bankr.S.D.N.Y.1983). Thus, this court cannot alter or amend Justice Dowd's order which appointed Commissioner Axelrod as permanent Receiver of the Home.[7] In addition, the court is persuaded that in any event the doctrine of sovereign immunity and the Eleventh Amendment preclude this court from ruling on the substantive issues raised and the court finds no waiver, as has been urged by the Debtor.

■ The doctrine of sovereign immunity is rooted in both the common law and the Eleventh Amendment of the United States Constitution. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 99–100, 104 S.Ct. at 907. Absent an explicit waiver, sovereign immunity provides a sovereign, be it a state or the federal government, immunity from suits in either law or equity.[8]

The Eleventh Amendment limits the authority of the federal courts by providing:

"§ 2. The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another States, or

---

**5.** While the court is cognizant that remitting Proceeding 1 to the State Court may have a detrimental effect on creditors, the creditors may avail themselves of a variety of actions in order to protect themselves, the most obvious of which would be to seek the appointment of a trustee to continue the conduct of future litigation.

**6.** Pursuant to the February 8, 1982 extension agreement, Bartholomew J. Lawson had withdrawn as a stockholder, officer and director of the Debtor. Shortly thereafter in April 1982 Mr. Lawson was indicted on charges that during in a labor dispute during the pendency of the receivership he conspired to firebomb a portable trailer being used as a temporary strike headquarters of District 1199 of the National Union of Health Care Workers. The indictment also charged that he sought payment for this "project" from Medicaid as a legitimate expense of the Home. Mr. Lawson was acquitted by a unanimous jury on or about November 4, 1983.

**7.** Justice Dowd's order provided:

"[T]he court having found that the operating certificate of the Respondents' [Lawson] was revoked by letter dated May 26, 1982 effective June 1, 1982 during a hearing held on June 1, 1982 and the court having granted the motion to appoint the Petitioner temporary Receiver

of the Haym Salomon Home for the Aged on June 1, 1982 it is

"ORDERED, that the Petitioner, *David Axelrod, Commissioner of Health be appointed permanent Receiver* of the Haym Salomon Home for the Aged pursuant to 28 PHL Section 2810(2), and it is further....

"ORDERED that the books, records and all other property of the Home shall be turned over to the Petitioner by Respondents forthwith, and it is further....

"ORDERED that the Respondents *right to pursue any administrative agency action on their establishment application shall not be affected* by this decision." Justice Dowd order, dated September 28, 1982. (Emphasis added).

**8.** Common law sovereign immunity goes to "when" a sovereign may be sued. It thus goes to whether the sovereign has consented to any given suit. The Eleventh Amendment (constitutional sovereign immunity) speaks of the forum in which a sovereign may be sued. It primarily serves to protect the several states from being sued in federal court and thus goes to "where" a state may be sued. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 99–100, 104 S.Ct. at 907. Accordingly, even when a state has consented to being sued, that consent may be limited to suits in the state forum.

by Citizens or Subjects of any Foreign State."

Although it does not specifically so state, the Eleventh Amendment has long been construed to preclude federal courts from entertaining suits brought by citizens against their own states. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ When a federal court is faced with an Eleventh Amendment challenge to its jurisdiction the court must first determine whether the suit is one against the state. "[I]n the absence of consent a suit in which the state or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. at 100, 104 S.Ct. at 907 (citations omitted). If the suit is not in fact "against the state," then the sovereign immunity challenge will not lie.

■ It is clear that the relief herein is primarily sought against the state agencies and officials because, if relief were not granted as to those defendants, any relief granted as to the Non-State Defendants would be of negligible value to Lawson. Indeed, this court could not grant relief as to the Non-State Defendants without adversely affecting and operating upon the State Defendants.[9] If the court were to reinstate Lawson as Receiver by displacing Olga Lipschitz, the court would necessarily displace Commissioner Axelrod as permanent Receiver of the Home. Accordingly, even if an order were technically directed only against Ms. Lipschitz as a Non-State Defendant, such an order would serve to act primarily against the State Defendants. By removing Ms. Lipschitz as Receiver, the court would be adversely affecting and limiting Commissioner Axelrod's right of designation regarding the operation of the Home. Conversely, any order of this court that did not affect the Department would afford no real relief to the Debtor because the Department would still be free to prohibit Lawson from acting as Receiver and to appoint another in Lawson's stead.

■ A sovereign may waive sovereign immunity, both as to whether it will consent to being sued, and as to the forum in which any such suit may be brought. However, the Supreme Court has set a high standard upon which to determine whether a state's sovereign immunity protection has been waived:

"A sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court. We have insisted, however, that the State's consent be unequivocally expressed. Similarly, although Congress has the power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity, *we have required an unequivocal expression of congressional intent to 'overturn the constitutionality guaranteed immunity of the several States'*" (*Pennhurst* at 99) (footnotes omitted) (emphasis added).

■ Lawson argues that this court should construe Bankruptcy Code § 106 as a legislative waiver of the Department's sovereign immunity.[10] While conceding

---

**9.** Whether Olga Lipschitz should be aligned with the State Defendants or the Non-State Defendants is not apparent from the documents before the court. As the designee of Commissioner Axelrod, Ms. Lipschitz could be considered an agent of the State, who would thus be aligned with the State Defendants. As it is most favorable to the plaintiff, for the purposes of this opinion, the court will assume Ms. Lipschitz is a Non-State Defendant.

**10.** Bankruptcy Code § 106 provides:
"(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
"(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
"(c) Except as provided in subsection (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
"(1) a provision of this title that contains 'creditor,' 'entity,' or 'governmental unit' applies to governmental units; and

that Code § 106(a) and (b) do not apply because the State has not filed a proof of claim, Lawson nevertheless asserts that Code § 106(c) sufficiently removes the sovereign immunity bar and permits the court to rule on the merits of Lawson's applications. Code § 106(c) provides for a waiver of sovereign immunity to the extent that an order of the bankruptcy court will bind a governmental unit when the court makes a determination and issues an order pursuant to a Code section allowing the court to bind a "creditor," "entity" or "governmental unit." These terms appear in numerous operative provisions of the Code. *See* 2 *Collier on Bankruptcy,* ¶ 106.04 (15th Ed.). Lawson maintains that a bankruptcy court order would bind the Department as an "entity"[11] who can be compelled to turnover property of the estate under Code § 542. While the United States Supreme Court has held that the Bankruptcy Court can direct a governmental unit to turn over property to a debtor,[12] this court finds that the legislative waiver of sovereign immunity found in Code § 106(c) is not so broad as to encompass the type of "turnover" here sought. Lawson has presented a contractual dispute with New York State in the guise of a turnover action. Turnover under Code § 542 can be directed only as to property which can be used, sold, or leased pursuant to Code § 363. Thus, this court cannot direct the turnover Lawson seeks without first ruling on the Debtor's contractual dispute with New York State as such a ruling is essential to determination of Lawson's right to use, sell or lease the property it seeks to have turned over.

The legislative history of the Bankruptcy Code clearly indicates that Code § 106 as a whole was intended to provide a rather "limited" waiver of sovereign immunity:

> "Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of [a] bankruptcy estate against a state, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit state action that is contrary to bankruptcy policy."

*House Report* No. 95–595, 95th Cong., 1st Sess. 317 (1977); *Senate Report* No. 95–989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815, 6274. (Emphasis added).

Although it is apparent that Code § 106(c) constitutes a significant legislative waiver of sovereign immunity, it is equally apparent that the Code § 106(c) waiver is not without limitation. If it were to construe Code § 106(c) in the fashion suggested by Lawson, the court would in essence render the waiver provisions found in Code § 106(a) and (b) superfluous. It is a well-established rule in statutory construction

---

"(2) a determination by the court of an issue arising under such a provision binds governmental units."

**11.** " '[E]ntity includes person, estate, trust and governmental unit" Bankruptcy Code § 101(4).
" '[G]overnmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District a Territory, a municipality, or a foreign state; or other foreign or domestic government Bankruptcy Code § 101(24)."

**12.** *See United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (although no proof of claim was filed, turnover order could issue against the Internal Revenue Service subject to adequate protection of I.R.S.'s security interest). See also *In re Remke, Inc. (Remke, Inc. v. United States),* 5 B.R. 299 (Bankr.E.D.Mich.1980) (debtor may recover preferential transfer from the Internal Revenue Service notwithstanding the fact that the I.R.S. had not filed a proof of claim). *Compare, In the Matter of Kennise Diversified Corp.,* 34 B.R. 237 (Bankr.S.D.N.Y.1983) (Article 7A Administrator of residential real property is not a "custodian" for the purposes of a Code § 543 turnover action; the property subject to Article 7A administration may not be the subject of a Code § 542 turnover order because it is not property that the debtor-in-possession may use, sell, or lease pursuant to Code § 363).

that a portion of a statute should not be construed so as to render another portion of that same statute meaningless, nor should the court read general provisions to override specific provisions of a statute.

■ Nor can the court find any actual waiver of sovereign immunity on the part of the Department. The Department has consistently and insistently maintained that these proceedings are barred by sovereign immunity and has taken no actions which this court would interpret as a waiver of its sovereign immunity.

■ Even if Proceeding 1 or Proceeding 2 were not barred by sovereign immunity, this court would defer their substance to the state courts or the administrative process for resolution. Lawson seeks orders from this court directing that it be appointed as Receiver of the Home and that assets of or related to the Home be turned over to it. Judge Babitt's June 2, 1982 order is the "law of the case" and serves to defer the matters raised herein to the State tribunals. Thus the determination of the "ownership rights" of the receivership, the Medicaid-Medicare reimbursement monies, and the assets of the Home must be resolved under the applicable law, in the appropriate state forums. Lawson remains free to pursue its remedies there.

Accordingly, for all the reasons set forth hereinabove, Adversary Proceeding numbers 82–5740A and 85–5761A will be, and they hereby are, dismissed. The Department's motion to dismiss will be, and it hereby is, granted and the order to show cause dated May 9, 1985 in which Lawson seeks reinstatement as Receiver of the Home will be, and it hereby is, denied.

Settle judgments in accordance with this opinion.